**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                          :
KATRINA C.[1],                            :        CIVIL ACTION
                        Plaintiff,        :
      v.                                  :
                                          :
MARTIN O'MALLEY, COMMISSIONER :
OF SOCIAL SECURITY,[2]                    :        No. 22-00996
                        Defendant.        :
_____:

### MEMORANDUM OPINION

**PAMELA A. CARLOS**
**U.S. MAGISTRATE JUDGE**                              **July 01, 2024**

      Plaintiff Katrina C. ("Plaintiff" or "Ms. C.") appeals the Commissioner of Social Security's final decision to deny her claim for benefits. She contends that the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is not supported by substantial evidence. Plaintiff explains that although the ALJ found that she suffers from several severe physical and mental impairments, which include cardiac arrhythmias, arthritis in her knees, morbid obesity, and bipolar disorder, the ALJ nevertheless found that she could somehow engage in work activity that requires her to be on her feet, standing and walking, for approximately six hours per day. In this regard, Plaintiff insists that the ALJ failed to adequately explain how these determinations were made and that no reasonable factfinder looking at the evidence of record would have reached the same conclusions. Moreover, according to Plaintiff, because the RFC

---

[1]     In accordance with the Court's recent standing order on party identification in social security cases, I have referred to the plaintiff solely by her first name and last initial. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf.

[2]     Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

assessment was inaccurate, the hypothetical questions posed to the vocational witness predicated on that assessment cannot constitute substantial evidence. As such, Plaintiff urges the Court to reverse the decision of the Commissioner and order that she be found disabled and entitled to benefits, or alternatively, to order a remand of her claims to the Commissioner for a new hearing.

The Commissioner disagrees, arguing that the ALJ's analysis was appropriate under the governing regulations. The Commissioner characterizes Ms. C.'s challenges to the ALJ's RFC determination as nothing more than a request of this Court to improperly substitute its judgment for that of the ALJ. According to the Commissioner, the ALJ analyzed the medical evidence and explained her findings concerning Ms. C.'s physical limitations. Indeed, the Commissioner argues that Ms. C. failed to explain how her obesity impacted her work-related abilities or warranted any greater limitations, as was her burden. Likewise, the Commissioner contends that the ALJ reasonably evaluated Plaintiff's mental work-related abilities, which included an assessment of Plaintiff's representations that she experiences rages and arguments that impair her ability to hold consistent employment. But, as the ALJ explained, the objective medical evidence does not reflect these concerns, thus warranting the limitations noted in the RFC determination. Given this, the Commissioner argues that the ALJ reasonably relied on the testimony of a vocational expert to determine that alternative jobs exist in the national economy that Ms. C. can perform.

For the reasons that follow, I will affirm the Commissioner's decision, and Ms. C.'s request for review is denied.

## I.   BACKGROUND

### A.   Factual and Procedural History.

Ms. C. was born in October 1969, and was 49 years old as of the alleged onset date of disability, 50 years old on the date last insured under Title II, and 51 years old as of the date of the ALJ's decision. *See* Doc. No. 6 at 4; R.549. She is a former middle school teacher and has a college degree and a master's degree in education. R.279, 281, 301, 303, 2019.

On February 14, 2020, Ms. C. filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging she became unable to work due to disabling conditions on December 20, 2018. R.549. Specifically, she alleged that she is unable to work due to bipolar disorder, arthritis in her knees, irritable bowel syndrome, obesity, and heart rate abnormalities. R. 549-62. Her applications were initially denied on June 18, 2020, and again upon reconsideration on January 21, 2021. *See* R.200. Ms. C. then requested a hearing before an ALJ, *see* R.494-95, and a hearing was held on February 15, 2021, *see* R.269-317 ("hearing transcript"). After this hearing, the ALJ issued a written decision on July 7, 2021 denying Ms. C.'s claim. R.197-217 ("ALJ Decision"). The Appeals Council denied Ms. C.'s subsequent request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. *See* R.1-7. Ms. C. now timely appeals.[3]

### B.   ALJ's Decision.

The ALJ evaluated Ms. C.'s claims using the five-step sequential analysis set forth in the Social Security regulations.[4] Beginning at step one, the ALJ determined that Ms. C. has not engaged in substantial gainful activity since December 20, 2018. R.202.

---

[3]     The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C § 636(c). *See* ECF Doc. No. 4.

[4]     The sequential analysis requires the ALJ to evaluate (1) whether claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether

At step two, the ALJ found that Ms. C. suffered from the following severe impairments: degenerative joint disease of the left knee, status post two arthroscopic surgeries; paroxysmal atrial fibrillation, status post pacemaker; irritable bowel syndrome ("IBS"); gastroesophageal reflex disease ("GERD"); morbid obesity; and bipolar affective disorder. R.203 (citing 20 CFR 404.1620(c) and 416.920(c)). The ALJ further found that Ms. C. had several other medically determinable events, noting that her records revealed a history of plantar fasciitis and left rotator cuff repair. R.203. However, the ALJ explained that there was "no evidence of any treatment for symptoms arising out of those conditions during the relevant period." R.203. The ALJ also explained that Ms. C. managed several other conditions including, among other things, anemia, sinusitis, mild obstructive sleep apnea, and short-term memory deficits. R.203. But the ALJ found that these other impairments were considered "nonsevere" because the evidence revealed that they did not significantly limit her ability to do basic work activities. R.203.

Moving on to step three, the ALJ concluded that none of Ms. C.'s severe impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the regulations. R.203-07. Specifically, the ALJ compared Ms. C.'s impairments to listings 1.17 (Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint); 1.18 (Abnormality of a major joint(s) in any extremity); 4.05 (Recurrent arrhythmias); and 5.06 (Inflammatory bowel disease) as well as Social Security Ruling ("SSR") 19-2p (Evaluating Cases Involving Obesity). R.203-07.

---

any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering her residual functional capacity; and (5) whether the claimant can adjust to other work considering her residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201-202 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)-(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

Before reaching step four, the ALJ considered Ms. C.'s RFC.[5] After reviewing the objective medical evidence and the subjective opinions in the record, the ALJ determined that Ms. C. "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b), except she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl and never climb ladders, ropes, or scaffolds, and she must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, and hazards, including machinery and heights." R.207.[6] The ALJ further found:

> [Ms. C.] can perform simple, routine tasks; make simple work-related decisions; understand, remember, and carry out simple instructions; and tolerate a low level of work pressure, defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, or teamwork in completing job tasks. She can work at a consistent pace throughout the workday but not at a production rate pace where each task much be completed within a strict time deadline. She can sustain an ordinary routine without special supervision, and she can tolerate occasional changes in the work setting. She can tolerate occasional interaction with coworkers, supervisors, and the public; however, she can participate and cooperate with supervisors and coworkers during the training period for unskilled work.

R.207.

At step four, the ALJ found that given Ms. C.'s RFC, she could not perform any past relevant work. R.215. The ALJ then proceeded to step five and identified multiple jobs in the national economy that Ms. C. could perform, including routing clerk, mail clerk, and marker.

---

[5]    Residual functional capacity, or RFC, is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

[6]    The regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The Social Security Administration has instructed that, "[t]o be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." *Id.* For example, "[i]f someone can do light work, [the Social Security Administration] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

R.216. As such, the ALJ concluded that Ms. C. was not disabled as defined by the Social Security Act ("SSA"). R.217

## II.     STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). In applying this deferential standard of review, the Court "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 552). In other words, the Court must not re-weigh the evidence before the ALJ, but instead must assess whether substantial evidence supports the ALJ's findings. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

In doing so, the Court determines whether the ALJ's decision "meets the burden of articulation demanded by the courts to enable informed judicial review." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *5 (M.D. Pa. May 19, 2021). In this regard, the ALJ need not "employ particular 'magic' words" or "adhere to a particular format in conducting his analysis." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Jones v. Barnhart,* 364

F.3d 501, 505 (3d Cir. 2004)). The Court requires—at the very least—that the ALJ "set forth the reasons for [their] decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

## III.    DISCUSSION

Plaintiff challenges the ALJ's unfavorable decision by broadly arguing that the RFC determination is not supported by substantial evidence or an adequate rationale. *See* Doc. No. 6 at 6-13. She insists the ALJ did not properly "consider the specific opinions of multiple treating sources," and did not properly consider the impact of her related impairments—both physical and mental—and how these affected her ability to work. *See id.* at 7. Moreover, Plaintiff argues that the ALJ's RFC determination "seems unconnected to any real world experience," insofar as it includes terms like "no production rate pace" or "occasional interaction with others." *Id.* at 15; *see also* Doc. No. 8 at 4. In short, Plaintiff emphasizes that "it is not enough to simply summarize the evidence and then reach a conclusion." *Id.* at 12. Rather, "there needs to be a logical nexus between that summary and the conclusion." *Id.* (citing *Avery v. Berryhill*, No. 1:16-CV-2312-TWP-TAB, 2017 WL 3404803, at *2 (S.D. Ind. Aug. 8, 2017)).

But as explained further below, these arguments are unavailing. However unsatisfied Plaintiff may be with the outcome, and even with the ALJ's explanation, it is not the responsibility of this Court to re-weigh the evidence or to require that the ALJ adhere to a specific form of analysis. The Court's review is limited, and upon undertaking that responsibility, I find that the ALJ reviewed the record and explained her reasons for finding Plaintiff capable of light work with several additional limitations. I further find that those reasons are supported by more than a "mere scintilla of evidence." *See Chandler*, 667 F.3d at 359. As such, the Court declines any invitation to re-assess the evidence and/or to impose its own factual determinations. *See id.*

**A.      The ALJ's Physical RFC Assessment Is Supported By Substantial Evidence**

Contrary to Plaintiff's contentions, I find that the ALJ closely analyzed the evidence concerning Plaintiff's physical ailments before concluding that she could perform light work with additional limitations.

The Social Security regulations explain that a claimant's RFC is the "most" that they can do despite their limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 ("RFC is not the least an individual can do despite his or her limitations or restrictions, but the *most*.") (emphasis in original). Plaintiff bears the burden of submitting evidence concerning her disability status. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").  However, "[t]he existence of a medical condition does not alone demonstrate a disability for purposes of the Social Security Act." *Raglin v. Massanari*, 39 F. App'x 777, 779 (3d Cir. 2002) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)). Rather, the ALJ considers the degree in which specific conditions result in functional limitations that prevent a claimant from obtaining substantial gainful employment in the national economy. *See Raglin*, 39 F. App'x at 779.

 In the instant matter, Plaintiff alleged that she was disabled due to several severe physical impairments including cardiac arrhythmias, arthritis in her knees, and morbid obesity. The ALJ considered these allegations, together with the evidence in support thereof. R.208-211. For example, the ALJ explained that in a Function Report dated May 11, 2020, Plaintiff noted left knee pain and weakness and difficulty lifting, squatting, standing, walking, sitting, kneeling, and climbing stairs. R.208 (citing Ex. C3E at R.587, R.592-593). The ALJ further noted that Plaintiff indicated she could only walk half a block to one block before needing to stop and rest, and that

she needed a cane for ambulation. R.208 (citing Ex. C3E at R.592-593). Beyond these self-reports, the ALJ discussed several examinations that supported these complaints, including a doctor's visit in March 2019 when Plaintiff described left knee pain and weakness. R.209 (citing Ex. C5F at R.1600).[7] The ALJ also analyzed Plaintiff's heart condition, acknowledging that Plaintiff had a pacemaker, and that she underwent a cardiac ablation. R. 205, 208, 209, 212.

However, and as explained by the Commissioner, the ALJ observed that Plaintiff's treatment records revealed no significant problems. *See* Doc. 7 at 5 (citing R.208, 209, 213). For example, the ALJ explained that after Plaintiff received a pacemaker in December 2018, she "reported only two episodes of syncope or near syncope." R.205 (citing Ex. C4F at R.1540, Ex. C8F at R.1791).[8] The ALJ explained that these events appeared unrelated to any underlying heart conditions, and that Plaintiff reported "dramatic improvement in her lightheadedness with a medication adjustment." R.205 (citing Ex. C14F at R.1882).[9] As it concerned her reported knee pain, the ALJ also explained that x-rays showed only "mild patellofemoral degenerative joint disease," and that her pain had been improving with physical therapy. R.209 (citing Ex. C6F and Ex. C9F).[10]

---

[7]   The ALJ also observed that Plaintiff was offered an injection for her pain during this visit, but declined. R.209 (citing Ex. C5F at R.1605).

[8]   Syncope is also called fainting or passing out.

[9]   The ALJ explained that Dr. Meetal Mehta's medical opinion dated December 27, 2018 included several significant restrictions. R.213 (citing Ex. C2F). The ALJ found the opinion to be persuasive, but only to the extent that it was limited in duration. R.213. The ALJ explained that this opinion was rendered upon Plaintiff's discharge from the hospital after receiving a pacemaker, and that such restrictions were consistent with Plaintiff's condition at that time. However, and crucially, the ALJ explained "these limitations are not consistent with the overall record, which documents good cardiac recovery." R.213 (citing Ex. C8F at R.1764, which notes that Plaintiff did not demonstrate atrial episodes, she has started to exercise, and has no chest pain, dizziness, and syncope, Ex. C14F at R.1882, which notes Plaintiff has reported "dramatic improvement in her lightheadedness" after a medication change, and that she does not have chest pain or other complaints generally).

[10]   Plaintiff's therapy was temporarily discontinued due to the COVID-19 pandemic. R.209. However, in September 2020, Plaintiff reported knee pain after playing sports with her son, where she was thereafter referred to therapy again. R.209 (citing Ex. C16F at R.1906). The next month, Plaintiff reported that the pain was improving with renewed therapy, and that although pain begins when she first rises from a seated position, it resolves itself as she continued to walk. R.1906. Indeed, Plaintiff did not report any mechanical symptoms or instability. R.1906.

Significantly, the ALJ also observed that notwithstanding Plaintiff's reported concerns, she still was able to participate in many daily activities, including caring for her young daughter, preparing meals, cooking, cleaning, and grocery shopping. R.206-208 (citing Ex. C3E at R.588-591, Ex. C19F at R.2021-2022, and Hearing Recording).[11]  Indeed, Plaintiff played sports with her son and walked her dog for exercise. R.209, 211 (citations omitted). As the Third Circuit has explained, "it is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity." *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) (citing *Burns v. Barnhart*, 312 F.3d 113, 129–30 (3d Cir. 2002)).[12]

Despite this, Plaintiff insists that the ALJ's RFC assessment is not supported by substantial evidence. Plaintiff argues, "[w]hether a decision is supported by substantial evidence must be ascertained by review of the rationale of the ALJ contained within the four corners of the decision." *See* Doc. No. 8 at 4.  It is not for the Commissioner, after the fact, to provide the supporting rationale. *Id.* Specifically, Plaintiff argues that the ALJ inadequately explained how she considered the effects of her obesity when making the RFC determination.  *See* Doc. No. 6 at 8. According to Plaintiff, no reasonable factfinder—after considering her cardiac arrhythmias, her pacemaker implant, and her history of arthritis, all together with her obesity—could find that she is capable of light work. *Id.*

---

[11]     Although the ALJ did not cite to specific pages of the transcript, the undersigned confirmed that Plaintiff testified as to several of these activities during the hearing. *See* R.280-281 (noting that Plaintiff testified that she drives once or twice a week, that she can drive her daughter to school, and that she attended physical therapy), 283-286 (noting that Plaintiff testified that she assisted her daughter with school work as much as she could, that she cooks three times a week, and that she takes her daughter to school, combs her hair, and dresses her).

[12]     The ALJ also cited to and was persuaded by the prior administrative medical findings of Drs. David Hutz, M.D., and Edwin Malloy, M.D., who both opined that Plaintiff could perform light work with several limitations. R.214-215 (citations omitted).

But there is no merit to these assertions. As the Commissioner correctly noted, the ALJ discussed Plaintiff's obesity throughout the decision and considered treatment notes providing a record of Plaintiff's weight and body mass index. *See* Doc. No. 7 at 6 (citing R.209-210, 212).  For example, when reviewing the opinions of State agency medical consultants David Hutz, M.D. and Edwin Mallow, M.D., the ALJ explained that the opinions were consistent with the totality of the evidence, which acknowledged Plaintiff's BMI, but nevertheless revealed that Plaintiff had "the ability to engage in many activities of daily living." R.214-215 (citations omitted).

More significantly, and as explained by the Third Circuit, "[t]he duty to evaluate a claimant's symptoms . . . does not extend to guessing what the impact of those symptoms may be." *Wimberly v. Barnhart*, 128 F. App'x 861, 863 (3d Cir. 2005). The Social Security regulations "explicitly impose on the claimant the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on the claimant's ability to work on a sustained basis." *Id.* In this regard, it was Plaintiff's burden to not only establish that she is obese, but to demonstrate how her obesity impacted her work-related abilities or warranted any further limitations. *See Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016) (rejecting plaintiff's challenge to the RFC determination noting that plaintiff "simply speculates about how his obesity might exacerbate other impairments," but "never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling."). As made clear by the foregoing, the ALJ considered Plaintiff's complaints and daily activities, the medical evidence of record, and the opinion evidence and concluded that she was capable of light work with several additional limitations.[13] Given this, I find that the ALJ's RFC assessment concerning Plaintiff's physical limitations is supported by substantial evidence.

---

[13]      In *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009), the Third Circuit discussed the interplay between the Court's deferential standard of review, the ALJ's responsibility to articulate its rationale, and the compounding

**B.      The ALJ's Mental RFC Assessment Is Supported By Substantial Evidence**

Plaintiff also contests the ALJ's assessment of her mental health and the concomitant

limitations caused by the same. But again, these arguments are without merit.

Like the assessment of Plaintiff's physical limitations, the ALJ considered Plaintiff's

subjective complaints that she experienced "erratic behavior, mania, rage, irritability, and

difficulty getting along with others." R.206 (citing Ex. C3E at R.587, 589, 591, 592, Ex. C7F at

R.1718, 1720, Ex. C19F at R.2020). Despite this, the ALJ observed that Plaintiff's "mental status

examinations were largely unremarkable,"[14] and that she could engage in many activities of daily

living, including managing money, spending time with others on the phone, and socializing with

---

effect of obesity upon disability claimants. In *Diaz*, the ALJ found at Step 2 that claimant's obesity was a severe impairment, but otherwise failed to address the exacerbating effect of this condition at Step 3 or in any other subsequent step in the disability analysis. *See Berry v. Kijakazi*, No. 1:20-CV-1629, 2021 WL 7162435, at *8 (M.D. Pa. Dec. 20, 2021), report and recommendation adopted, No. 1:20-CV-01629, 2022 WL 551246 (M.D. Pa. Feb. 23, 2022) (summarizing *Diaz*). Given this, the Third Circuit held that the district court erred in holding the ALJ's decision was supported by substantial evidence. *See Diaz*, 577 F.3d at 504.

In doing so, however, the Third Circuit "made it abundantly clear that its decision . . . did not in any way alter the very deferential substantive standard of review in these cases." *Berry*, 2021 WL 7162435, at *8. Specifically, the *Diaz* Court explained, "[w]ere there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court [and affirm the ALJ's decision]." *Diaz*, 77 F.3d at 504 (emphasis in original). Indeed, following *Diaz*, the Third Circuit has since held that that an ALJ's statement that he "considered any additional and cumulative effects of obesity," before turning to the medical evidence of record was sufficient to satisfy its duty of articulation. *See Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014). The court explained, "[a]lthough it would have been helpful had the ALJ more thoroughly explained the combined effects of [claimant's] impairments, we nonetheless conclude that the ALJ conducted his analysis in a manner sufficient for us to engage in meaningful review." *Id.*

That is what happened here. The ALJ noted that Plaintiff was "diagnosed with morbid obesity during the relevant period," that the record "reflects a consistent pattern of obesity," and that she "considered the effects of obesity on the claimant's ability to function in accordance with Social Security Ruling 19-2p." R.210. The ALJ then turned to the evidence of record when assessing Plaintiff's functional limitations. This assessment, on several occasions, explicitly noted Plaintiff's obesity and/or BMI, even if it did not do so in a manner that Plaintiff finds satisfactory. But it is not the role of this Court to require that the ALJ "adhere to a particular format in conducting his analysis." *Diaz*, 577 F.3d at 504. Here, the Court is satisfied that the ALJ adequately set forth the reasons for her findings, and the Court will not entertain any invitation to re-weigh the evidence.

[14]        In support of this observation, the ALJ cited to treatment notes following several visits. For example, these notes consistently revealed that Plaintiff was cooperative and possessed "goal-oriented" thought processes for sessions held between May 2019 and November 2020. R.1710, 1712, 1714, 1950. Moreover, and as the ALJ explained, treatment notes revealed that Plaintiff "was able to advocate for herself when she had difficulty during speech and language testing in January 2021." R.206 (citing Ex. C20F at 2035).

friends. R.206.[15] The ALJ also considered the psychological evaluation conducted in January 2021

by Martha DiPrinzio, Psy.D., which revealed that although Plaintiff reported depression, mania,

and other symptoms, she could perform simple calculations, her memory skills were intact, and

her cognitive functioning appeared average. R.210; *see also* Ex. C19F at R.2021. Dr. DiPrinzio's

report also confirmed that Plaintiff can cook and prepare food, drive, shop, and manage money,

among other activities. R.2021-22.

Finally, the ALJ found the opinions of State agency consultants Francis Murphy, Ph.D. and

Shelly Ross, Ph.D. to generally be persuasive. R.214. The ALJ noted that Dr. Murphy opined that

Plaintiff "could engage in simple, repetitive tasks in a setting with limited social demands, while

Dr. Ross opined that [Plaintiff] could understand, retain, and follow simple instructions

(i.e., perform/follow one- and two-step tasks/instructions)." R.214 (citations omitted). As the ALJ

explained, these reports were consistent with the evidence as a whole, which "contains a few

objective findings but generally documents routine and conservative treatment and the ability to

engage in many activities of daily living." R.214 (citations omitted).

Plaintiff, however, insists that the ALJ's determination that she only had a "moderate"

impairment in interacting with others is not supported by substantial evidence. *See* Doc. No. 6 at

10-11. According to Plaintiff, the ALJ confirmed Plaintiff's history with bipolar disorder, but

nevertheless characterized this as a "moderate" problem because "Ms. C[.] 'generally had a well-

groomed appearance, satisfactory grooming, normal speech, cooperative demeanor, adequate

manner of relating, adequate social skills, and appropriate eye contract.'" *See id.* (citation omitted

---

[15]     Again, the ALJ broadly cited to the "Hearing Recording," without specific page references to the transcript.
However, as noted above in footnote 11, the undersigned confirmed that Plaintiff testified as to several of these
activities during the hearing. *See, e.g.,* R. 289-90 (noting that Plaintiff testified that she had two friends, one in
California and one in New Jersey, that she socializes with).

in original). Plaintiff emphasizes that the ALJ here simply summarized the medical evidence and reached a conclusion without providing a logical nexus between the two. *Id.* at 12.[16]

But this is not a fair characterization of the ALJ's decision. As outlined above, the ALJ acknowledged Plaintiff's self-reported concerns, but explained that her "mental status examinations were largely unremarkable." R.206. The ALJ cited to the treatment notes and medical opinions and explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the record. R.210. The ALJ also specifically considered Plaintiff's suggestion that her "anger and rage would affect the quality of her interaction with supervisors, coworkers, and the public," but nevertheless explained that the "objective medical evidence does not reflect those reported anger outbursts." R.212. To the contrary, the ALJ explained that her mental status examinations "showed cooperative demeanor, adequate manner of relating, adequate social skills, and appropriate eye contract." R.212 (citations omitted). Indeed, the ALJ explained that Plaintiff reported "that she got along well with her family and could play with her daughter, grocery shop, spend time with others on the phone, socialize with friends, and attend doctors' appointments." R.213.

Plaintiff concedes that "the ALJ has broad discretion in determining residual functional capacity and a reviewing Court should not simply substitute its judgment for an ALJ where the evidence is open to multiple reasonable interpretations." *See* Doc. No. 6 at 11-12. However, her challenges to the ALJ's RFC determination do not point to specific evidence in the record that was

---

[16]       In her opening brief, Plaintiff argued that the ALJ based her findings on "a refusal to properly consider the specific opinions of multiple treating sources." *See* Doc. No. 6 at 7. Beyond this conclusory allegation, however, Plaintiff failed to explain which opinions were ignored or not properly considered. Given this, I find that any argument concerning the ALJ's assessment of the medical opinion evidence to be waived. *See Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) (finding that the inclusion of "one conclusory sentence" in a brief that merely suggests an argument, without further developing it, will result in waiver); *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue ... will not suffice to bring that issue before this court.'") (citation omitted).

wholly ignored or other deficiencies in the analysis that would warrant remand. The ALJ adequately explained the reasons for her findings, and those reasons are supported by more than a "mere scintilla of evidence." *See Chandler*, 667 F.3d at 359.  As such, the Court rejects Plaintiff's challenges to the ALJ's RFC determination concerning her mental health limitations.[17]

## IV.    CONCLUSION

For the reasons explained above, Ms. C.'s request for review is **DENIED**. The Court finds that the ALJ's decision was supported by substantial evidence. As such, the final decision of the Commissioner of Social Security is **AFFIRMED,** and this matter is **DISMISSED.** An appropriate Order follows.

BY THE COURT:

*s/Pamela A. Carlos*
PAMELA A. CARLOS
U.S. Magistrate Judge

---

[17]      Having found that the ALJ's RFC determinations were supported by substantial evidence, the Court further rejects Plaintiff's final argument concerning the hypotheticals given to the vocational expert. Plaintiff argues that the ALJ erroneously omitted some of Plaintiff's credibly established limitations from the RFC, and so the resulting hypothetical questions predicated on that determination cannot be considered substantial evidence. *See* Doc. No. 6 at 13-16. But this challenge appears to be nothing more than an extension of her earlier arguments, which have already been rejected.  In short, the ALJ was permitted to rely upon the testimony of the vocational expert because said testimony "was in response to a hypothetical that fairly set forth every credible limitation set forth by the physical evidence." *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999).

But Plaintiff additionally takes issue with the ALJ's inclusion of terms like "no production pace" in the RFC on the grounds that the resulting hypothetical questions "seem[] unconnected to any real world experience." *See* Doc. No. 6 at 15; *see also* Doc. No. 8 at 9-10. Plaintiff explains that such a vague phrase "is an essentially empty concept," because "[a]ll work has production demands," and "[i]n the real world, an employee, particularly an unskilled employee, must keep up with whatever demands are made on production by the employer." *See* Doc. No. 8 at 9. However, this was explicitly addressed by the ALJ in her decision. R.216. The job descriptions for each of the three vocations identified by the expert – routing clerk, mail clerk, and marker – do not provide a rapid pace requirement. *See* Routing Clerk, DOT 222.587-038, 1991 WL 672123; Mail Clerk, DOT 209.687-026, 1991 WL 671813; Marker, DOT 209.587-034, 1991 WL 671802. As noted by the ALJ, the vocational expert "testified that where the DOT is silent, such as with respect to pace of work, multitasking, and deadlines, her testimony was based on her professional experience performing on-site job analyses, labor market research, and job placement." R.216 (citing R.307-08). As such, there is no merit to Plaintiff's repeated contention that these phrases and/or the resulting testimony have no basis in reality. To the contrary, the expert testified as to their professional experience in this area, and an ALJ can properly rely on said testimony to identify jobs the Plaintiff can perform given her RFC. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e).